[Civ. No. 5056. Fourth Dist. Nov. 7, 1955.]

C. O. BRAND, Appellant, v. MAGNOLIA MANOR (a Partnership) et al., Respondents.

Willard H. Winder for Appellant.

S. Thomas Bucciarelli for Respondents.

BARNARD, P. J.—This is an action for damages. The defendants owned 60 lots of a subdivision containing 160 lots, and planned to build certain houses and eventually to build houses on the remainder of the tract. They entered into some sort of a contract with the plaintiff and his partner for certain sewer work on part or all of this tract. They

built houses on the 60 lots and the plaintiff and his partner did a certain amount of sewer work, for which they were paid in full. The plaintiff brought this action claiming that the defendants had prevented him from performing the remainder of the contract, and that he had been damaged in the sum of $3,000. The plaintiff's partner refused to join him in the action.

The complaint alleged that the parties entered into a written contract on April 6, 1950, by the terms of which it was agreed that the plaintiff was to make certain sewer improvements in Magnolia Manor consisting of laying 6,285 linear feet of 8″ sewer pipe at $1.85 per lineal foot; installing 16 manholes at $150 each; and laying 7,200 linear feet of 4″ pipe for house connections at $1.30 per foot; with an additional $15 for each sewer line which was obstructed by a curb and gutter. It was further alleged that the plaintiff performed one-half of this work, was ready, willing and able to perform the remainder, but was prevented by the defendants from so doing. The written contract attached to the complaint was in the form of a "bid" dated April 6, 1950, addressed to the defendants, signed by the plaintiff and approved by one of the defendants. So far as material here, this bid refers to "Magnolia Manor Sewer Improvements" and states "I submit for your approval the price, as quoted below for the above mentioned improvements." It then lists as Item 1, 6,285 linear feet of 8″ sewer pipe at $2.25 per linear foot, $14,421.25; as Item 2, 16 manholes, $160 each, $2,560; as Item 3, 7,200 linear feet of 4″ house connections at $1.45 per linear foot, $10,440: total price $27,141.25. The figure $2.25 in the first item is struck out and $1.85 inserted. The figure $160 in the second item is struck out and $150 inserted. The figure $1.45 in the third item is struck out and $1.30 is inserted. All of these changes are initialed by the plaintiff. The three totals for each item and the total price of $27,141.25 are all struck out, with nothing inserted in lieu thereof.

The answer admitted that the defendants entered into a contract with the plaintiff on or about April 6, 1950, but alleged that by the terms thereof it was agreed that the plaintiff was to do so much of the sewer work on this subdivision as the defendants should from time to time request him to do; that such work was to consist of installing not more than 6,285 lineal feet of sewer lines at a price of $1.85 per linear foot, not more than 7,200 feet of 4″ pipe for housing con-

nections at a price of $1.30 per linear foot, and not more than 16 manholes at a price of $150; that it was further agreed that said agreement could be terminated at any time, with the plaintiff being paid at the agreed rates for all work done up to that time; that the plaintiff installed 2,950 lineal feet of 8″ sewer line, 3,854 lineal feet of house connections, and 10 manholes, for which he had been fully paid at the rates provided in the agreement; that the defendants then notified the plaintiff that they did not desire him to do any more of said work; and that the contract was then terminated, to which termination the plaintiff agreed.

The court found that all of the allegations of the defendants' answer are true; that the defendants had paid the plaintiff in full for all work done by him under the contract; that the contract was terminated by mutual agreement; that all sums due the plaintiff under the contract have been paid to him; and that the plaintiff has suffered no damages whatever. The plaintiff has appealed from the judgment which followed.

The evidence received, if admissible, amply sustains all of the court's findings. The only claim to the contrary is with respect to the finding that the contract was terminated by mutual agreement. While there was no direct evidence that the appellant agreed to such a termination after his work was done, the oral evidence disclosed that this was a part of the original agreement as made by the parties. Moreover, that finding is immaterial in view of the other findings made.

The appellant contends that the intention of the parties must be gathered from the written contract itself; that the written contract sued on is clear and unambiguous, and provides on its face for the installation of certain amounts of material at named prices, the amount due being merely a matter of computation; that under section 1625 of the Civil Code oral testimony could not be received to change the written terms of that contract; that the oral testimony supporting the findings was inadmissible; and that it follows that there is no evidence to support the findings and judgment.

█ Section 1625 of the Civil Code must be considered in connection with sections 1856 and 1860 of the Code of Civil Procedure. (*Greathouse* v. *Delano,* 57 Cal.App. 187 [206 P. 1019].) Under the latter sections, oral evidence may be received in many cases in order to show the surrounding circumstances, to the end that the trial judge may be in a

position to establish the intention of the parties where that intention does not fully and clearly appear on the face of the instrument. Not only did this bid fail to set out a number of the matters which would be required in a complete contract, but it showed on its face that it had been changed by striking out certain things, only a part of which were replaced. While it purported to be submitted as a bid for ''the price'' of certain improvements, and originally gave a total price, the alterations made disclosed a pattern which might well indicate a contrary intention. The total cost for each item and the total price for the entire work were stricken, and no substitutions therefor were made, although the unit prices of the various items were altered, and new prices substituted. Evidence as to the circumstances and understanding of the parties in connection with these changes, as to why they were made and as to what was intended thereby, was essential in order that the intention of the parties and the meaning of the bid, as approved, could be determined. On the face of the instrument sufficient uncertainty and ambiguity existed to justify the admission of oral evidence as to the circumstances under which these changes were made, and the intent and purpose of the parties with respect to the meaning of the agreement as finally approved. (*Parnell* v. *Stanfield*, 135 Cal.App.2d 804 [288 P.2d 118].)

The appellant testified that when he delivered his bid to the respondents on or about April 6, 1950, he was told that they did not have the final profile of the sewers yet; that he went back a couple of days later and they then had the final profile; that ''So we rechecked the job and changed the price, and put the lineal foot price on it, and I initialed it, each one''; and that Mr. Shidler then signed it. He also testified that his partner was not present when the bid was signed.

 The testimony of the respondents was to the effect that the appellant and his partner were both present when the bid was presented, and that the changes were made at that time, before the bid was approved; that it was known to all parties that the respondents did not own all of the tract and intended to develop 60 lots only, with the hope of developing more later; that the bid was accepted on a ''unit price basis''; that the bid as originally submitted covered the work on the entire 160 lots; and that the totals of the various figures were not changed because it could not be known at that time how much work would be required. The appellant's partner

testified that he and the appellant entered into the agreement with the respondents with respect to this work; that he was present when the bid was presented to the respondents; that when the bid was presented there was a discussion with respect to the unit prices; that as a result of the discussion the unit prices were changed; that those changes were initialed by the appellant; that the total figures were crossed out; that "There was no use changing totals of figures because Mr. Shidler at that time didn't know how many houses he was going to build so we couldn't estimate how much work was to be done so we bid on a unit price basis"; that the understanding was that the agreement could be terminated at any time providing he and his partner were paid for the work they had already done; and that he later told his partner that he could see no basis for a suit "because all that work was based on a unit price bid." There was no evidence that the respondents built any houses other than those on the 60 lots which they originally owned. The evidence supports the court's findings with respect to the terms of the agreement that was actually made.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.